ABOY, VIDAL & Co., INC., demandante y apelada, *v.* COMPAÑÍA INTERURBANA DE PUERTO RICO, demandada y apelante.

No. 4147.—*Sometido:* Abril 12, 1928.  *Resuelto:* Abril 5, 1929.

*Coll y Cuchí & Cruzado Silva,* abogados de la apelante; *J. Valldejuli Rodríguez,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

Se permitió que José V. Toste, quien en una época fué tesorero de la corporación demandada, declarara como testigo de la demandante, con la objeción de la otra parte, al efecto de que, mientras estuvo empleado con dicha corporación, Vicente M. Alcaraz era el administrador general. La objeción se fundaba en que el acta de la junta de directores hubiera sido la mejor prueba. Posteriormente, Alcaraz declaró en el mismo sentido, sin que la demandada presentara objeción alguna, e hizo referencia a un convenio escrito que fué más tarde presentado como prueba, sin que tampoco se opusiera la demanda. Bajo estas circunstancias, el error, de haberse cometido alguno al admitirse la declaración de Toste, no justificaría la revocación.

Otras contenciones, son, substancialmente, que la corte inferior cometió error al admitir como prueba los dos pagarés descritos en la demanda, al resolver que la forma en que dichos pagarés fueron otorgados y suscritos los hacía pagarés de la corporación; al resolver que las deudas a que se refiere la demanda eran deudas de la corporación demandada, y que al autorizarlas Alcaraz en la forma en que lo hizo obligó a dicha demandada; y al dictar sentencia a favor de la demandante, incluyendo la concesión de costas.

En septiembre de 1924, Vicente M. Alcaraz era dueño de dos vehículos de motor de servicio público que se dedicaban a transportar pasajeros entre San Juan y Martin Peña y entre San Juan y el Parque Borinquen. El adeudaba a

varias firmas,—corporaciones e individuos unos $5,500. Según los términos de un contrato escrito celebrado con la Compañía Interurbana de Puerto Rico, Inc., le vendió y entregó a dicha corporación sus vehículos y franquicias, y se convirtió en administrador general de la misma. Debía percibir un sueldo de doscientos dólares mensuales durante el primer año y, en los años sucesivos, la compensación que él y el presidente de la corporación convinieran. Como tal administrador general, debía ejercer autoridad y discreción en la administración del negocio; hacer cuanto fuera necesario para llevarlo a cabo, ser la más alta autoridad de la corporación, sujeta únicamente a las instrucciones del presidente en unión del tesorero, y firmar todos los cheques y documentos de dicha entidad.

La venta se efectuó por $10,500, $5,000 de los cuales fueron pagados en acciones y el balance de $5,500 fué retenido por la corporación a fin de satisfacer las obligaciones pendientes de Alcaraz que fueron asumidas por ella.

La compra de estos vehículos caía muy bien dentro de los fines para los cuales fué organizada la Compañía Interurbana. La demandada estaba expresamente autorizada por sus cláusulas de incorporación para dar, aceptar, garantizar, endosar, o de cualquier otro modo negociar o protestar por falta de aceptación o de pago, letras de cambio, pagarés, valores, resguardos, conocimientos de embarque y cualquiera otra clase de documentos.

Los pagarés estaban suscritos así: "Compañía Interurbana de P. R., Por V. M. Alcaraz, Administrador General." Se les fijó una especie de sello. Uno de los testigos de la demandada dice que ése era el sello del administrador general y no el de la corporación. El juez sentenciador llegó a la conclusión de que el sello usado al otorgar el contrato entre Alcaraz y la corporación, cuya autenticidad no ha sido impugnada por la demandada, era idéntico al usado cuando

se otorgaron los pagarés. Nada hay que indique que se llamara específicamente la atención del juez sentenciador sobre la cuestión de si el sello fijado por el Administrador General era o no el sello de la corporación. No tenemos a la vista los documentos originales. Bajo estas circunstancias, no estamos en condiciones de decir que los pagarés fueron indebidamente admitidos como prueba, o que se resolviera erróneamente que eran obligatorios para la corporación, bajo la teoría de que no se fijó el sello de la corporación. Con eso no es nuestra intención resolver o dar a entender que bajo las circunstancias peculiares de este caso en particular era necesario el uso del sello de la corporación.

Al tiempo de otorgarse los pagarés, la demandante tenía en su poder copia del contrato celebrado entre Alcaraz y la corporación. Hubo prueba tendente a demostrar que el presidente de la corporación estaba ausente de la isla, pero que había dejado un representante personal, y que después de consultarse a este representante, se firmaron los pagarés en cuestión en su oficina, en su escritorio, y en su presencia.

Dos días después de haberse radicado la demanda en el presente caso, el presidente de la corporación, actuando como abogado de la demandada, manifestó en una carta que escribió a la demandante que su cliente nunca había negado su deuda a la demandante, sino que había convenido con el letrado de dicha demandante que se dictara sentencia a su favor, con el entendido de que esa sentencia sería satisfecha en plazos mensuales. El objeto de esta carta era explicar por qué este convenio no se había llevado a la realidad. Hubo prueba directa al efecto de que la deuda representada por los pagarés era una de las obligaciones asumidas por la demandada en su contrato con Alcaraz, y la prueba en conjunto no deja lugar a dudas sobre este extremo. Por consiguiente, la corte no cometió error al declarar que las deudas a que se refería la demanda eran las deudas de la demandada.

La cuestión de costas no se discutió separadamente en el

alegato, y no vemos que haya habido abuso de discreción al imponerlas.

*Debe confirmarse la sentencia apelada.*